**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

**LUIS ALBERTO LUGO-VELEZ,**

    **Petitioner,**

    **v.**

**UNITED STATES OF AMERICA,**

    **Respondent.**

**Civil No. 05-1974 (ADC)**

## OPINION & ORDER

Petitioner, Luis Alberto Lugo-Vélez ("petitioner"), filed a petition for a writ of habeas corpus (the "petition") from a federal conviction and sentence rendered after a jury trial in Criminal Number 01-717 (HL) which was affirmed on appeal. **Docket No. 1**. Petitioner seeks post-conviction relief on the basis that he received ineffective assistance of counsel during trial and on appeal, and that he was sentenced pursuant to a statute different than that under which he was charged and convicted. *Id.;* **Docket No. 3.**

The petition and corresponding motions were referred to Magistrate-Judge Camille Vélez-Rivé (the "Magistrate-Judge") for a Report and Recommendation ("R & R") on March 10, 2008. **Docket Nos. 21, 22**. On May 7, 2008, the Magistrate-Judge issued a R & R which recommended dismissing the petition. **Docket No. 25**. Petitioner objected to the R & R and the respondent replied to the petitioner's objections. **Docket Nos. 26, 29.** On September 23, 2008, the court held an evidentiary hearing to address the issues raised in the petition and heard the sworn testimony of attorney Edgar Vega (petitioner's trial counsel) as well as petitioner's arguments in opposition of attorney Vega's testimony. **Docket No. 34.** On September 30, 2008, after careful review of the record, the Magistrate-Judge's recommendations and the petitioner's objections thereto, the court issued an Opinion and

Civil No. 05-1974 (ADC) Page 2

Order denying petitioner's 2255 motion (Docket No. 1). **Docket No. 36**.[1] The court found that petitioner had failed to show that counsel's actions rendered his representation ineffective. *Id.*

Petitioner filed a motion for Notice of Appeal on March 17, 2009. **Docket No. 45**. He later filed a motion for Certificate of Appealability ("COA") on August 3, 2009. **Docket No. 59**. On November 16, 2009, this court declined to issue petitioner a COA, advising petitioner of his right to file a COA directly before the First Circuit Court of Appeals. **Docket No. 66.** Consequently, on March 23, 2010, the First Circuit Court of Appeals granted petitioner's request for a COA on the issue of whether the district court erred by failing to appoint counsel to represent him at the evidentiary hearing of September 23, 2008. **Docket No. 69.** Thus, the Court of Appeals vacated the portion of the court's order that dismissed the three ineffective assistance of counsel claims and remanded the case to this court, with instructions to conduct an evidentiary hearing on the ineffective assistance of counsel contentions while having petitioner assisted by court appointed counsel. *Id.*

Following the First Circuit's mandate, the court held an evidentiary hearing on August 10, 2010, at which time petitioner was represented by the Federal Public Defender. **Docket No. 81.** Once the hearing concluded, parties filed post-hearing briefs (**Docket Nos. 88, 91**) and the case is now ready for disposition**.**

I.   **Legal Standard**

To prevail on an ineffective assistance of counsel claim, petitioner "must show both deficient performance by counsel and resulting prejudice." *Telvin v. Spencer*, - - - F.3d - - -. 2010 WL 3932081, 5 (1st Cir. 2010), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). For the "deficient performance" prong, petitioner must prove that his trial counsel's

---

[1]The court adopted in part, and modified in part, the R & R. **Docket No. 36.** The modification stemmed from the court's determination that the petitioner should have been afforded an evidentiary hearing as the Magistrate-Judge should not have relied entirely on the contents of defense counsel's affidavit in denying petitioner's request.

representation "fell below an objective standard of reasonableness." *Id.*, citing to *Strickland*, 466 U.S. at 687. Reasonableness is considered in the light of "prevailing professional norms," bearing in mind that review of counsel's performance is deferential and that a strong presumption exists that said performance "falls within the wide range of reasonable professional assistance." *Id.*, quoting *Strickland*, 466 U.S. at 688-9. Thus, "[t]o satisfy the deficient-performance prong, the defendant 'must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,' and the court then determines whether, in the particular context, the identified conduct or inaction was 'outside the wide range of professionally competent assistance.'" *U.S. v. Manon,* 608 F.3d 126, 131 (1st Cir. 2010), citing *Strickland,* 466 U.S. at 690.

On the other hand, the "prejudice" prong requires petitioner to show with "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Porter v. McCollum*, - - - U.S. - - -, 130 S. Ct. 447, 453 (2009)(per curiam)(quoting *Strickland*, 446 U.S. at 694)(quotation marks omitted). Thus, petitioner must establish "a probability sufficient to undermine confidence in [that] outcome." *Tevlin v. Spencer*, 2010 WL at 5, (quoting *Porter*, 130 S. Ct. at 455-56, quoting *Strickland*, 466 U.S. at 693-94). "In making the prejudice assessment, we focus on the fundamental fairness of the proceeding." *U.S. v. Manon*, 608 F.3d at 131-32 (internal citations and quotations omitted).

II.     **Application/Analysis**

Here, petitioner argues that he received ineffective assistance of trial counsel for the following: (1) failure to explain to the defendant his right to testify; (2) failure to inform the defendant of a plea offer; and (3) failure to properly investigate the case.[2] We shall discuss

---

[2] Although petitioner raised three claims of ineffective assistance of counsel (*See* **Docket No. 1**), petitioner's post-hearing brief centers on one argument, *to wit*, trial counsel's failure to investigate. To that effect, petitioner's brief states: "Based on current law and the evidence adduced at the hearing, undersigned counsel finds that the only issue before the court is wether [sic] trial counsel investigated this case within acceptable parameters." *See* **Docket No. 88** at 2. However, following the First Circuit's mandate, we shall probe each of petitioner's three claims of ineffective assistance of counsel.

Civil No. 05-1974 (ADC) Page 4

each in turn.

### 1. Failure to Explain to the Defendant his Right to Testify

Petitioner argues his trial counsel did not inform, or afford him, his right to testify at the trial. During the evidentiary hearing, petitioner testified that he was willing to take the stand, but that his trial counsel advised him against testifying. **Docket No. 87** at 40, L. 25, 41, L. 1-10, 47, L. 3-5. However, at the evidentiary hearing, petitioner admitted that, at trial, his counsel advised him of his right to testify and recommended that he not testify. *Id.* at 47, L. 3-5.[3] Further, petitioner admitted that the court advised him of his right to testify and questioned him twice on whether he had decided not to testify, but that he simply told the court "no". *Id.* at 47, L. 11-25, 48, L.1-16, 53, L. 10-13. Petitioner went on to state that he did not insist on taking the stand and the court did not probe any further and merely continued proceedings. *Id.*

Petitioner's recollection seems incredible and illogical for three main reasons. First, if the court advised petitioner of his right to testify and questioned petitioner as to whether he waived said right, it follows that, had petitioner declared then that he did not, the court would have asked him to either take the stand and/or questioned petitioner's counsel on his client's assertion. What the court would have not done was to continue with the proceedings, with the knowledge that the defendant wanted to testify.[4] Second, when the court advised petitioner of his right to testify, it also follows that, upon the court's questions, petitioner would have requested to take the stand or insisted on testifying. Petitioner admitted that he never told the presiding Judge that he wanted to testify. **Docket No. 87** at 52, L. 12-13, 53, L.

---

[3] Trial counsel also testified that the presiding Judge asked petitioner directly and addressed petitioner directly regarding his right to testify. **Docket No. 87** at 61, L. 3-8.

[4] The court notes that the petitioner appealed his jury conviction for possession of narcotics with intent to distribute and possession of firearms, including machine guns, in furtherance of a drug trafficking scheme. However, petitioner did not raise any argument or error as to having been denied his right to testify. The First Circuit Court of Appeals affirmed said conviction. *U.S. v. Carlos Cruz*, 352 F. 3d 499 (1st Cir. 2003).

10-18. Third, this court finds both convincing and credible trial counsel's testimony that he informed his client both of his right to testify and that it was petitioner's decision to do so or not; but, that counsel's professional recommendation was for petitioner not to testify. *Id.* at 60, L. 17-22, 61, L. 10-21. In fact, petitioner admits that his counsel advised him against testifying and that he did not testify following his attorney's advise. *Id.* at 40, L. 25, 51, L. 1-13, 47, L. 3-5. Trial counsel Vega testified that his recommendation stemmed from his experience as a criminal defense attorney and his investigation of the case. He also stated he had considered other factors, such as how the petitioner spoke and the way he believed petitioner would confront the government's cross-examination, among others. *Id.* at 61, L. 14-25, 62, L. 1-5.

In addition, the court reviewed the petitioner's jury trial transcript and the same confirms trial counsel Vega's testimony. At petitioner's jury trial, counsel Vega advised the court that he explained to his client his right to testify and his right to remain silent; that he conveyed to his client his recommendation and that his client informed him that he had decided not to testify. *See* Transcript of Continuation of Jury Trail, February 19, 2002, Volume IV, page 144, L. 9-22. After hearing counsel's affirmation, made before the petitioner, the court also asked the petitioner directly whether he was not going to testify, to which petitioner stated "no" twice. *Id.* at 144, L. 23-25, 145, L.1-6. Thus, although petitioner now states otherwise, the fact remains that petitioner did not inform the court that his counsel's assertions were false or of his desire to testify at any point in the proceedings.

In view of the foregoing, petitioner's assertion that he was not advised or afforded of his right to testify is simply unpersuasive are completely rebutted by the trial record and accordingly, are without merit. As petitioner and trial counsel's testimonies at the evidentiary hearing and the jury trial record make clear, counsel Vega advised petitioner of his right to testify, gave petitioner his recommendation, and so informed the court. After hearing counsel Vega, the court also questioned petitioner over whether he wished to testify. Therefore, the court finds that petitioner knew of his right to testify during trial, as he was advised by his

counsel of said right and was questioned by the court on his decision. Consequently, petitioner's ineffective assistance of counsel claim on this issue fails.

### 2. Failure to Inform the Defendant of a Plea Offer

Next, petitioner posits that his counsel failed to inform him or properly explain to him the plea offer. However, when questioned by his counsel at the evidentiary hearing, petitioner was vague and imprecise as to what he knew of the plea agreement. He simply stated that his trial counsel kept discussing a plea agreement of eight years; but, that trial counsel did not explain further and as such, he declined the plea offer. **Docket No. 87** at 41, L. 14-25, 42, L. 1-19. Again, petitioner's testimony does not coincide with the evidence on record.

The plea agreement offered was one for ten (10) years, not eight. **Exhibit A.** Trial counsel Vega testified that, prior to trial, he had reviewed and discussed the agreement with petitioner at the detention center where he was housed, but that petitioner had rejected the offer. **Docket No. 87** at 56, L. 12-25, 57-58. Counsel Vega further explained that the government had offered both petitioner and co-defendant a plea agreement of ten (10) years. Before trial began, he recalled that he and co-defendant's counsel (Attorney Lydia Lizarribar) discussed with the government the possibility of having the ten-year term reduced, which the lead prosecutor flatly declined. *Id.* at 59-60, L.1-14. Trial counsel testified that both petitioner and co-defendants' counsel approached the bench to inform the court that their clients were inclined to accept a plea offer below ten (10) years, at which time the presiding judge informed Mrs. Sonia Torres, Chief of the Criminal Division, of the possibility of offering co-defendants a plea below the ten (10) years in order to avoid trial in the case. Attorney Vega further testified that, at a side bar with co-defendants' counsel and prosecution, Mrs. Torres declined to offer anything below ten (10) years. Counsel Vega stated that he informed his client of the government's rejection of a below 10 year plea and that defendant, again, rejected the plea offer and decided to go to trial. *Id.*

From trial counsel's testimony, it is clear that both he and co-defendant's counsel were

actively engaged in plea negotiations, and that even the Chief of the Criminal Division appeared before the court to discuss the plea offer and whether the government would agree to a below 10 year plea. However, the government rejected defendant's counter-offer in court, before the petitioner, who was seated at the defense table. Counsel Vega narrated how he discussed the results of those plea negotiations with his client and that his client refused the government's final plea offer of 10 years. Therefore, petitioner's argument that counsel failed to properly advise him of the plea offer is not supported by the record and does not reflect ineffective assistance of counsel.

### 3. Failure to Call and Identify Witnesses

Last, petitioner complains that his counsel failed to properly investigate the case within acceptable parameters and call witnesses who could have testified favorably in his defense. **Docket No. 88.** In support of this contention, petitioner brought the testimony of an alleged witness to the arrests, Mr. Juan Pablo Santos-Cintrón ("Mr. Santos"). First, Mr. Santos testified that he did not know if the petitioner had ever been arrested. **Docket No. 87** at 3, L. 4-6. He then went on to narrate that he was at the pub where petitioner was a bartender, and witnessed petitioner's arrest. *Id.* at 3, L. 21-25, 4-8. Although Mr. Santos stated that he was available to serve as a witness, he admitted he was not interviewed by any attorney prior to trial, nor did he attend petitioner's trial. It was only on February 25, 2002, five days after the jury verdict, that petitioner's common law wife took Mr. Santos to co-defendant's counsel's (Lydia Lizarribar) office, where he signed a sworn statement which reflected his recollection of the events that transpired the night of the arrest. *Id.* at 73, L. 11-25, 74, L. 1-2.. In fact, Mr. Santos testified that, although willing to serve as a witness, petitioner's wife only contacted him after the jury verdict to provide a sworn statement. *Id.* at 7, L. 16-25, 8-9, L.1-21.

Petitioner also brought his father, Mr. Luis Alberto Lugo-Reyes, as a witness. However, Mr. Reyes testified that, although he knew of potential witnesses, he did not seek or meet with his son's attorney, nor did he even know his son's attorney's name. He stated that he delegated these matters to his son's common law wife, who was the one that had

retained counsel. He claimed that she never took him to meet his son's counsel but, neither did he ask. **Docket No. 87** at 28, L. 3-26, 29, L. 1-15, 31, L. 1-12. Mr. Reyes testified he did not come to court to ask who his son's attorney was or how to locate him. *Id.* at 30, L. 18-25. In fact, Mr. Reyes was not in Puerto Rico when his son was arrested, nor when his son went to trial. He stated he did not attend his son's trial because he was in Tampa, Florida and returned to Puerto Rico after the trial had concluded. *Id.* at 31, L. 13-25.[5] He further admitted that he made no personal effort to meet counsel or go to his office. *Id.* at 35, L.25, 36, L. 1-8.

Based on the foregoing facts and counsel's investigation, it is not unreasonable or ineffective for trial counsel to have not called upon Mr. Santos when he did not know of him or of his willingness to serve as petitioner's witness. Further, trial counsel can not be faulted for failing to interview petitioner's father when he was not in this jurisdiction at the time of the arrest or during petitioner's trial, much less could he have known that petitioner's father, after trial, had prepared a witness list.

The court gives credence to trial counsel's testimony of his efforts to investigate and identify witnesses. He stated he visited the area where petitioner had been arrested several times. He visited the building where petitioner was arrested with attorney Eduardo De Jesús, who was well acquainted with the area and represented other defendants in that vicinity. He also visited the drug point that was located near the pub where the police were conducting the surveillance, and went into the pub. He believes he interviewed a woman who was in charge of the pub.[6] He also interviewed the Municipal policewoman, who was assisting the

---

[5] Mr. Reyes testified that, when he returned to Puerto Rico after his son's arrest, he started investigating and prepared a list of potential witnesses. **Docket No. 87** at 32. However, the court finds it hard to believe that, having investigated the circumstances of the arrest and compiled a witness list for events that occurred when he was away form the jurisdiction, he would not have investigated and/or inquired further as to who his son's attorney was.

[6] Trial counsel testified that he does not have records of the names of the people he interviewed because he destroys the files of the cases in his office every five or six years. The events transpired in October of 2001 and trial was in February of 2002. Therefore, petitioner's case file had been destroyed.

state policemen with the traffic at the time of the arrests. He explained that the policewoman had told him that she did not witness anything regarding the facts or circumstances surrounding the arrest because at the time, she was simply providing support to the arresting officers with traffic. **Docket No. 87** at 63, L. 15-25, 63-64, L. 1, 65, L.3-11, 69, L. 5-22.[7] Counsel Vega further went on to testify that neither petitioner, nor his common law wife, nor anyone related to petitioner, gave him a list of potential witnesses. In fact, petitioner's common law wife did not take anyone to trial counsel's office for him to interview, much less prepare sworn statements. *Id.* at 64, L. 23-25, 65, L. 1-2., 15-25, 66, L. 1-2, 68, L. 18-23. Based on his investigation, counsel Vega testified that his strategy at trial was to impeach and attempt to discredit the government's witnesses, a majority of which were agents. *Id.* at 62, L. 6-17, 72, L. 3-7.

Therefore, given the circumstances highlighted above, the court can not find fault in counsel's investigation of the case. Under *Strickland's* performance prong, counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 691. Similarly, following *Strickland's* guideposts, the First Circuit Court of Appeals has held that counsel's deficiency lies "only where, given the facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it." *Knight v. Spencer*, 447 F. 3d 6, 15 (1st Cir. 2006). Here, counsel, with the facts known at the time, went to the pub, interviewed witnesses and the municipal police officer that was in close proximity to the area of petitioner's arrest. He visited the area on several occasions, but no one he interviewed or questioned knew or was

---

**Docket No. 87** at 67, L. 5-19.

[7] At the evidentiary hearing, trial counsel further stated that the petitioner's relative informed him a neighbor would be willing to testify, but never gave him any specific information, such as his/her name or address. When he visited the area on several occasions, no one was willing to give any specific information about the case, nor was anyone willing to testify or serve as a witness. **Docket No. 87** at 69, L. 11-22.

able to relay any relevant information. Last, trial counsel candidly and credibly testified that he was never given any witness list from petitioner's then common law wife or any other family member.

In light of the above, it is considered that trial counsel made reasonable efforts to identify potential witnesses, but found none at the time that would further his client's defense. Thus, given the facts and investigation he conducted, trial counsel made the strategic decision not to call any witnesses and center his defense on impeaching the government witnesses. *See Phoenix v. Matesanz*, 233 F.3d 77, 81-83 (1st Cir. 2000)(noting that defense counsel's decision whether to call a particular witness is most always strategic, stating "'strategic choices . . . are virtually unchallengeable'" (quoting *Strickland*, 466 U.S. at 690)(emphasis omitted)). *See also Janosky v. St. Amand*, 594 F.3d 39, 49 (1st Cir. 2010)(Finding that counsel's performance in a failure to investigate claim was not oversight, but a conscious strategic decision. "In the circumstances of this case, reasonably competent counsel could have determined that the best defense was a good offense-a no-holds-barred attack designed to discredit the officers' investigation and undermine the reliability of their informant.")

The court notes that, at the evidentiary hearing, petitioner did not bring his former common law wife as a witness to counter trial counsel's testimony that she did not give him a witness list or that Mr. Santos was on said list. She was the person who met, retained, and had sole contact with petitioner's counsel. However, it was only five (5) days after the jury verdict that petitioner's wife drove Mr. Santos to counsel Lizarribar's office to provide the sworn statement. The reasons for which she did not take Mr. Santos to petitioner's own counsel before trial remain unknown, but are beyond the scope of trial counsel's control and can not be held against him in an ineffective assistance claim. The facts surmised in the evidentiary hearing from both the testimony of petitioner's witnesses and his own testimony failed to prove that counsel's investigation or his failure to identify and call witnesses, including Mr. Santos, fell below an objective standard of reasonableness. *See United States v. Manon*, 608 F. 3d 126, 134-135 (1st Cir. 2010)(holding that defendant was not deprived of

effective assistance of counsel by counsel's failure to investigate and call witnesses who could have testified favorably).

Additionally, petitioner's allegation that trial counsel's failure to investigate potential witnesses prejudiced his defense finds no support in the record. "Where, as here, the result of counsel's alleged failure to investigate is wholly speculative, *Strickland's* prejudice prong is not satisfied." *Janosky v. St. Amand*, 594 F.3d at 49. After hearing the testimonies of Mr. Santos and Mr. Lugo, this court finds that petitioner was unable to show that trial counsel was ineffective in failing to identify these witnesses, unknown to him prior to trial, or that said failure prejudiced his defense. As the First Circuit Court of Appeals has expressed, "[effectiveness does not require that counsel jump through every conceivable hoop or engage in futile exercises." *United States v. Pellerito,* 878 F. 2d 1535, 1540 (1st Cir. 1989). Nothing in the record supports petitioner's claim that the fate of the case would have been different otherwise.

### III.   Conclusion

For the reasons expressed above, the court **DENIES** petitioner's section 2255 petition (**Docket No. 1**) regarding his claims of ineffective assistance of counsel.

**SO ORDERED**

At San Juan, Puerto Rico, on this 14th day of March, 2011.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**